STOULIG, Judge.
Defendant, Delta Container Corporation (Delta), has appealed a judgment awarding plaintiff, Clean Sweep, Inc., $1,413.30 in a suit on a contract to clean and seal Delta’s warehouse floor.
Initially plaintiff submitted a proposal to sand and apply a 14% acrylic concrete protective sealer on the floor area measuring approximately 20,000 square feet. The job was to be done in four phases of 5,000 square feet each between Friday and Sunday nights so that defendant’s regular business operation would not be disrupted.
At defendant’s request, plaintiff used a substitute sealer, Tennant 416 Epoxy Penetrating Seal, after defendant’s representative Sidney Folse and plaintiff’s supervisor Alan Reinecke viewed another floor where it had been applied. After plaintiff completed the first section by applying three coats of the Tennant seal, it became apparent almost immediately that the product would not adhere to the concrete floor.[1]
Folse then advised Reinecke he wanted Matter Cure and Seal used instead of Ten-nant. Plaintiff reworked the first section with the Matter seal, which adhered better, but did not produce the result Folse expected.
Plaintiff’s workmen applied only one coat of sealer to the second section in place of the three originally specified in the contract. This was on the advice of the Matter representative with full concurrence of Folse. After plaintiff’s laborers had sanded the third section (admittedly with a lesser grade of sandpaper), Folse cancelled the contract.
To plaintiff’s demand for payment for the labor and materials it expended on the job, Folse defended by claiming plaintiff left the floor in worse condition than it was when the work was undertaken. Defendant uses the area in question for storing, shipping and receiving materials. Its forklifts carry loads up to 2,000 pounds without using pallets and the trucks deposit their loads by tilting the fork at a downward angle, and reversing quickly so that the load will stay in place. Admittedly this practice entails “digging out” or spinning wheels in place until the truck moves out quickly. Plaintiff’s position is that this hard use removed the Matter sealer from the floor and left it in the condition of which defendant’s representative complains. Plaintiff maintains normal use of the forklift would not have caused this condition.
The trial court concluded plaintiff properly prepared and sealed the floor. In well-stated verbal reasons the trial judge found the Tennant and Matter sealers selected by defendant’s representative inadequate to seal a floor subjected to “digging out” driving operations. Because defendant’s agent Folse selected the material, he cannot hold the contractor for deficiencies in the product. Sisters of the Good Shepherd v. Quinn Const. Co., 225 So.2d 225 (La.App. 4th Cir. 1969).
The question of damages is difficult because plaintiff’s casual approach to bookkeeping has produced imprecise records. We state at the outset that it is apparent plaintiff expended considerable time, labor and materials on this job and should not have its suit dismissed because of internal clerical errors. We do not think a remand could clarify the situation because the records kept by plaintiff are inadequate.
We find no fraud or subterfuge in these inconsistencies and will reconstruct damages from that part of the record we deem *1064 competent evidence. Claims for labor and materials are supported by testimony, invoices and/or plaintiff’s bookkeeping records, such as they are.
Plaintiff was billed $1,309 for 110 gallons of Malter seal material. Of this amount 50 gallons were used before plaintiff was discharged from the job and 60 gallons, packaged in 10 gallon drums, were returned. The trial court allowed $917 or 70% of the amount on the theory that plaintiff would get credit for the unopened containers. The record fails to explain why the seals were broken by plaintiff on three of the ten gallon drums for which Malter refuses to allow plaintiff credit. We think plaintiff is entitled to be paid for the material actually used at the rate of the $11.90 per gallon price or 50 X $11.90 = $595. In addition plaintiff is entitled to $53.61 or the accrued service charges for late payment.
Plaintiff was awarded $60 for 12 wool pads and two applicators based on testimony they were purchased at the cost itemized on Tennant’s list. Cost of the applicators was understated by plaintiff, but it was awarded the amount sought in its petition.
The next item complained of is 200 hours of labor at $3 per hour, or $600. Reinecke, plaintiff’s supervisor, testified 228 hours were expended and there is some confusion in the records of Clean Sweep’s payroll. It is obvious that plaintiff spent considerable time on this job. Excluding labor, defendant was not charged for removing the Ten-nant sealer and redoing the first section.
Plaintiff was awarded the $54 for gasoline consumed by its vehicles for 18 trips to the jobsite. The testimony of Reinecke is sufficient to establish this item.
We reduce the award of $322 for rental of sanders to $142.16 because this is the amount the record supports as the rental expense attributable to the Delta job.[2] The evidence also warrants the award of $65 for the stripper and $148 for sanding pads.
The foregoing awards are subject to a credit of $700 previously paid. In summary we award:
Sealer material and late charge $ 648.61
Pads and applicator 60.00
Labor 600.00
Gas travel expense 54.00
Sander rental 142.16
Floor stripper at $13 per gallon 65.00
Sanding pads 148.00
$1,717.77
Less payment 700.00
$1,017.77
For the reasons assigned, the judgment appealed from is amended to reduce the award to plaintiff from $1,413.30 to $1,017.77 and as amended, it is affirmed. Costs are to be divided equally between the litigants.

AMENDED AND AFFIRMED.

. Reinecke testified that the Tennant product could actually be “picked up and peeled from the floor” and that this condition was not caused by any of the defendant’s forklift activities.

. Invoices dated 3/25/76 for $16.84; 4/2/76 for $62.66 and 4/9/76 for $62.66.